Bridget S. McCabe (SBN 272545)
*bmccabe@bakerlaw.com*
Dyanne J. Cho (SBN 306190)
*dcho@bakerlaw.com*
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard
Suite 1400
Los Angeles, CA  90025-0509
Telephone:   310.820.8800
Facsimile:   310.820.8859

*Attorneys for Defendant*
US COMPOUNDING, INC.

**IN THE UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NEXUS PHARMACEUTICALS, INC., | Case No.: 2:20-cv-07331-CJC (JDEx) |
| Plaintiff, | Hon. Cormac J. Carney |
| v. | **DEFENDANT US COMPOUNDING, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| US COMPOUNDING, INC., | |
| Defendant. | [*Filed concurrently with Request for Judicial Notice; Declaration of Dyanne J. Cho; [Proposed] Order*] |
| | **Hearing**<br>Date:        January 11, 2021<br>Time:        1:30 p.m.<br>Place:       Courtroom 9B |
| | Action Filed: August 13, 2020<br>FAC Filed: November 23, 2020 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO THE COURT AND TO PLAINTIFF NEXUS PHARMACEUTICALS, INC. AND TO ITS COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on January 11, 2021 at 1:30 p.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Central District of California located at 411 West Fourth Street, Santa Ana, CA 92701, Courtroom 9B, Defendant US Compounding, Inc. will, and hereby does, move the Court, under Federal Rule of Civil Procedure 12(b)(6) for an order dismissing with prejudice the First Amended Complaint of Plaintiff Nexus Pharmaceuticals, Inc. ("Nexus"), ECF No. 23.

Nexus has failed to state a claim upon which relief can be granted and Nexus's First Amended Complaint should be dismissed with prejudice for the following reasons. Nexus's claims are barred by non-mutual collateral estoppel and are preempted by the Federal Food, Drug, and Cosmetic Act. In addition, Nexus's claims under California and Florida cannot proceed because Nexus failed to allege in-state facts that would permit extraterritorial application of those statutes. Alternatively, because this case requires the Food and Drug Administration's ("FDA") technical expertise, the Court should invoke primary jurisdiction so FDA can address the relevant technical and policy questions.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, Declaration of Dyanne J. Cho, all pleadings on file in this action, and such oral argument as may be presented at or before the time of hearing on this Motion.

//

//

1    This Motion is also made following the conference of counsel pursuant to

2  C.D. Cal. L.R. 7-3, which took place on Monday, November 30, 2020, via

3  telephone.  Counsel were unable to reach a resolution that would have made this

4  Motion unnecessary.

Dated:  December 14, 2020          **BAKER & HOSTETLER LLP**

By:    */s/ Bridget S. McCabe*
       Bridget S. McCabe
       Dyanne J. Cho

*Attorneys for Defendant*
US COMPOUNDING, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# **TABLE OF CONTENTS**

I.  Introduction ............................................................................... 1

II.  Background of Section 503B Compounding ................................... 3

III.  Nexus's Allegations ..................................................................... 6

IV.  Legal Standard ............................................................................ 8

V.  ARGUMENT ............................................................................... 9

  A.  Nexus's Causes of Action Are Barred by Claim Preclusion ............... 9

  B.  Nexus's Causes of Action Are Preempted by the FDCA ................... 11

  C.  Count One Fails: the UCL Does Not Apply Extraterritorially ........... 16

  D.  Count Two Fails: the FDUTPA Does Not Apply Extraterritorially ... 18

  E.  In the Alternative, Nexus's Claims Fall Within FDA's Primary
      Jurisdiction and the Court Should Dismiss Them or Stay the Case ... 19

VI.  CONCLUSION ........................................................................... 22

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allergan USA Inc. v. Imprimis Pharms., Inc.*,
  2017 WL 10526121 (C.D. Cal. Nov. 14, 2017) ................................... 15

*Allergan USA Inc. v. Imprimis Pharms., Inc.*,
  2018 WL 5919210 (C.D. Cal. Apr. 30, 2018)..................................... 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................ 8

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015)................................................ 20

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1990)................................................. 8

*Bank of Am., N.A. v. Zaskey*,
  2016 WL 2897410 (S.D. Fla. May 18, 2016) ............................... 18, 19

*Beckington v. Am. Airlines, Inc.*,
  926 F.3d 595 (9th Cir. 2019)................................................. 8

*Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*,
  353 F. Supp. 3d 1070 (D. Colo. 2018) ...................................... 19

*Borchenko v. L'Oreal USA, Inc.*,
  389 F. Supp. 3d 769 (C.D. Cal. 2019)..................................... 12, 13

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001) ................................................ 12, 13, 14, 15

*Churchill Vill., L.L.C. v. Gen. Elec. Co.*,
  169 F. Supp. 2d 1119 (N.D. Cal. 2000)...................................... 17

*Clark v. Bear Stearns & Co.*,
  966 F.2d 1318 (9th Cir. 1992).............................................. 10

*Clark v. Time Warner Cable*,
  523 F.3d 1110 (9th Cir. 2008).............................................. 20

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

*Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery*,
    44 F.3d 800 (9th Cir.1995) ........................................................................ 9

*FBME Bank Ltd. v. Lew*,
    142 F. Supp. 3d 70 (D.D.C. 2015) ........................................................... 14

*Fund For Animals v. Mainella*,
    335 F. Supp. 2d 19 (D.D.C. 2004) ........................................................... 14

*Gershman v. Bayer HealthCare LLC*,
    2015 WL 2170214 (N.D. Cal. May 8, 2015) ........................................... 17

*Goldsmith v. Allergan, Inc.*,
    2011 WL 147714 (C.D. Cal. Jan. 13, 2011)............................................. 12

*Gustafson v. BAC Home Loans*,
    2012 WL 4761733 (C.D. Cal. Apr. 12, 2012).................................... 17, 18

*Hawkins v. Risley*,
    984 F.2d 321 (9th Cir. 1993) ..................................................................... 9

*Hope Medical Enterprises, Inc. v. Fagron Compounding Services, LLC*,
    2020 WL 3803029 (C.D. Cal. Jul. 7, 2020) ............................................ 14

*JHP Pharms., LLC v. Hospira, Inc.*,
    52 F. Supp. 3d 992 (C.D. Cal. 2014)........................................................ 15

*Lewand v. Mazda Motor of Am., Inc.*,
    2017 WL 8117764 (C.D. Cal. Nov. 8, 2017).......................................17, 18

*Martin v. Texaco, Inc.*,
    602 F. Supp. 60 (N.D. Fla. 1985) ............................................................ 14

*Moss v. Nui Phao Mining Joint Venture Co.*,
    2010 WL 3222377 (N.D. Cal. Aug. 13, 2010)......................................... 11

*Nexus Pharmaceuticals, Inc. v. Central Admixture Pharm. Servs. et al*,
    2020 WL 6867069 (C.D. Cal. Nov. 18, 2020) ...........................1, 2, 9, 10, 11

*Nexus Pharmaceuticals, Inc. v. QuVa Pharma, Inc.*,
    2020 WL 6498970 (C.D. Cal. Oct. 29, 2020) ........................1, 2, 9, 11

*Nexus v. Leiters*,
    No. 2:20-cv-07328, ECF No. 70 ...........................................1, 2, 9, 11

iii

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Obesity Research Inst., LLC v. Fiber Research Int'l*,
    165 F. Supp. 3d 937 (S.D. Cal. 2016) ................................................................ 18

*Parklane Hosiery Co. Inc. v. Shore*,
    439 U.S. 322 (1979) ........................................................................................... 9

*Perez v. Nidek Co., Ltd.*,
    711 F.3d 1109 (9th Cir. 2013)..................................................... 12, 13, 14, 15

*Retail Clerks Int'l v. Schermerhorn*,
    375 U.S. 96 (1963) ........................................................................................... 12

*Saber v. JP Morgan Chase Bank, N.A.*,
    2013 WL 12124000 (C.D. Cal. Oct. 9, 2013) ..................................................... 9

*Shwarz v. U.S.*,
    234 F.3d 428 (9th Cir. 2000) .............................................................................. 9

*Somers v. Beiersdorf, Inc.*,
    2020 WL 1890575 (S.D. Cal. Apr. 15, 2020) ................................................... 15

*Stengel v. Medtronic, Inc.*,
    704 F.3d 1224 (9th Cir. 2013) .......................................................................... 14

*Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*,
    307 F.3d 775 (9th Cir. 2002) .............................................................. 19, 20, 21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ........................................................................................... 8

*Theodoropoulos v. Cty. of Los Angeles*,
    2015 WL 13403899 (C.D. Cal. Oct. 15, 2015) ................................................. 11

*Tidenberg v. Bidz.com, Inc.*,
    2009 WL 605249 (C.D. Cal. Mar. 4, 2009) ................................................ 16, 17

*Tran v. Sioux Honey Assoc'n, Coop.*,
    2018 WL 10612686 (C.D. Cal. Aug. 20, 2018) ................................................ 14

*Webb v. Carter's, Inc.*,
    2009 WL 10670244, at *4 (C.D. Cal. June 23, 2009)................................. 16, 18

**Statutes**

21 U.S.C. § 332................................................................................................. 12

BAKER & HOSTETLER LLP<br/>ATTORNEYS AT LAW<br/>LOS ANGELES

iv

21 U.S.C. § 333.................................................................................................12

21 U.S.C. § 334.................................................................................................12

21 U.S.C. § 337(a)..............................................................................12, 20, 21

21 U.S.C. § 353b...................................................................................8, 13, 20

21 U.S.C. § 353b(a)........................................................................................4, 5

21 U.S.C. § 353b(a)(1)........................................................................................4

21 U.S.C. § 353b(a)(7)........................................................................................5

21 U.S.C. § 353b(a)(10)......................................................................................4

21 U.S.C. § 353b(b)............................................................................................5

21 U.S.C. § 353b(d)..........................................................................................15

21 U.S.C. § 353b(d)(1)........................................................................................4

21 U.S.C. § 353b(d)(4)(A)...............................................................................4, 5

21 U.S.C. § 372.................................................................................................12

Drug Quality and Security Act, Pub. L. No. 113-54, 127 Stat. 487
     (2013).............................................................................................................3

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................................8

**Other Authorities**

159 Cong. Rec. H5946-65 (daily ed. Sept. 28, 2013) ...........................5, 21

159 Cong. Rec. S8071-76 (daily ed. Nov. 18, 2013) .....................4, 5, 21

84 Fed. Reg. 46,014 (Sept. 3, 2019) ..................................................6, 21

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

v

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Earlier this year, Plaintiff Nexus Pharmaceuticals, Inc. ("Nexus") filed this lawsuit and five related lawsuits against compounders of sterile, injectable ephedrine sulfate products, attempting to enforce through state unfair competition statutes what Nexus perceived to be violations of the Federal Food Drug and Cosmetic Act ("FDCA").[1]

To date, this Court has granted motions to dismiss in three of the Related Cases.  Your honor dismissed *Nexus v. Fagron* and *Nexus v. Leiters* on October 29, 2020 and *Nexus v. CAPS* on November 18, 2020, finding that Nexus's claims were impliedly preempted by the FDCA.  *See Nexus Pharmaceuticals, Inc. v. QuVa Pharma, Inc.*, 2020 WL 6498970, at \*2-3 (C.D. Cal. Oct. 29, 2020); 10/29/20 Order, *Nexus v. Leiters*, No. 2:20-cv-07328, ECF No. 70 ("*Nexus v. Leiters* Order"), at 7-8; *Nexus Pharmaceuticals, Inc. v. Central Admixture Pharm. Servs. et al*, 2020 WL 6867069, at \*2-3 (C.D. Cal. Nov. 18, 2020).  Nexus voluntarily dismissed a fourth Related Case (*Nexus v. SCA*), while the hearing date for a fully briefed Rule 12 motion on preemption grounds was a week and a half away.  This case, like the others, fails on preemption grounds and should be dismissed without leave to amend.

Like in the three cases the Court dismissed (and the fourth that Nexus voluntarily dismissed), Nexus's two state law causes of action here are founded on violations of the FDCA: "Nexus alleges that Defendant['s] actions constitute unfair competition because they are not following the rules—and those rules are the FDCA rules."  *See, e.g.*, *Nexus Pharm. v. QuVa*, 2020 WL 6498970, at \*3.  By failing to voluntarily dismiss the case in light of the Court's recent preemption

---

[1] The five cases related to this action are: Case Nos. 8:20-cv-01506 ("*Nexus v. CAPS*"), 2:20-cv-07328 ("*Nexus v. Leiters*"), 2:20-cv-07329 ("*Nexus v. Fagron*"), 2:20-cv-07518 ("*Nexus v. QuVa*"), and 2:20-cv-07520 ("*Nexus v. SCA*") (collectively "Related Cases").

rulings, Nexus asks the Court to once again take up the same preemption inquiry, apparently hoping that this time, the result will be different. But having already had a full and fair opportunity to litigate these issues *three* separate times, Nexus is not permitted to try again here. This Court's orders in *Nexus v. QuVa*, *Nexus v. Leiters*, and *Nexus v. CAPS* are unambiguous. "[T]he reasons Nexus alleges that Defendants are competing unfairly are established by FDCA requirements, which the FDA has the exclusive authority to enforce" and thus, "Nexus's claims conflict with the federal statutory scheme" and are preempted on those grounds. *See, e.g.*, *Nexus Pharm. v. QuVa*, 2020 WL 6498970, at *3; *Nexus v. Leiters* Order, at 7 (same); *Nexus v. CAPS*, 2020 WL 6867069, at *2-3. The same is true here.

In all the Related Cases, including those the Court has already dismissed and in this case, Nexus alleged that each Defendant is engaging in unfair competition because it has "not obtained the approval of FDA (or any other relevant regulatory authority) to introduce the compounded ready-to-use ephedrine sulfate drug products that they manufacture, market, sell, and distribute." *See* FAC ¶ 52 (this case); *Nexus Pharm. v. QuVa*, 2020 WL 6498970, at *3 (same in *QuVa* case); *Nexus v. Leiters* Order, at 6 (same in *Leiters* case); *Nexus v. CAPS*, 2020 WL 6867069, at *3 (same in *CAPS* case). As the Court observed in all the dismissed cases, this is one of the "reasons Nexus alleges that Defendants are competing unfairly" and as the Court concluded in all the dismissed cases, "FDA approval is clearly within the scope of the FDCA's 'comprehensive regulatory authority'" and thus, claims based on that alleged misconduct are preempted. *Nexus Pharm. v. QuVa*, 2020 WL 6498970, at *3; *Nexus v. Leiters* Order, at 6; *Nexus v. CAPS*, 2020 WL 6867069, at *3. Nexus's allegations here have already been tested and rejected. Any differences in the allegations in this case, compared to the allegations

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

in the Related cases, are only as to *which* FDCA violations anchor Nexus's causes of action,[2] not *whether* the causes of action are anchored on the FDCA (they are).

Nexus's claims against US Compounding, Inc. ("US Compounding") are thus barred by non-mutual claim preclusion.  Even if they were not, the claims would nevertheless be preempted by the FDCA because as in the Related Cases, Nexus alleges misconduct that rises and falls on an interpretation of the FDCA.  No matter how Nexus dresses up its allegations, they are at their core federal infractions that Congress directed the Federal Food and Drug Administration ("FDA") to enforce.  In addition, Nexus asserts a California Unfair Competition Law claim and a Florida Deceptive and Unfair Trade Practices Act claim, but fails to plead facts showing those statutes should apply extraterritorially to Nexus, an Illinois resident, for compounding by US Compounding, an Arkansas resident, that occurs in Arkansas.  For all these reasons, the First Amended Complaint should be dismissed with prejudice.   In the alternative, the Court should exercise the primary jurisdiction doctrine because adjudicating Nexus's claims requires FDA's technical expertise.

Nexus's gambit to end-run the FDCA has failed three times, been abandoned once, and it fails for a fifth time here.

## II.     BACKGROUND OF SECTION 503B COMPOUNDING

In 2013, Congress enacted the Drug Quality and Security Act ("DQSA") to regulate drug compounding by adding the Compounding Quality Act to the FDCA.  *See* Drug Quality and Security Act, Pub. L. No. 113-54, 127 Stat. 587, 587 (2013).  It was enacted so that patients and medical providers alike would have access to safe, reliable drugs manufactured under the same stringent safety requirements as

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

---

[2] In the Related Cases that have been dismissed, Nexus alleged violations of the "essentially a copy" prohibition; in this case, Nexus alleges a violation of the "essentially a copy" prohibition, as well as violations of the compounding from bulk provisions in Section 503B.

3

FDA-branded drugs, to eliminate the patchwork of varied state-law standards, and to give FDA stronger teeth to enforce compounding rules.

Drug compounding has a long history.  It is the custom of "combining, admixing, mixing, diluting, pooling, reconstituting, or otherwise altering of a drug or bulk drug substance to create a drug." 21 U.S.C. § 353b(d)(1).  Patients and medical providers rely on compounding to fill a gap left by FDA-branded drugs. As Congress recognized, "[w]ithout compounders, doctors would not perform surgeries.  Without compounders, oncologists would be forced to administer alternative chemotherapy drugs.  Without compounders, patients would suffer from limited access."  *See* Ex. D to Request for Judicial Notice ("RJN"), 159 Cong. Rec. S8073 (daily ed. Nov. 18, 2013) (statement of Sen. Boozman).  Compounders like US Compounding provide a vital service by performing this necessary service on a large scale, in state-of-the-art facilities, and under stringent manufacturing criteria. Through the DQSA (and with it, the Compounding Quality Act, i.e., Section 503B and Section 503A), Congress deliberately balanced the importance of compounding to our healthcare system with the need for controls to address the legacy of unregulated compounding practices.  *See* Ex. D to RJN, 159 Cong. Rec. S8074 (statement of Sen. Warner) (The Act "ensures that patients and providers have access to safe compounded drugs.").  Section 503B created a new category of drug compounders who may compound sterile drugs under certain circumstances: "outsourcing facilities."[3]  Drug products compounded by an outsourcing facility are exempt from FDA's new drug application process if eleven conditions are met.  21 U.S.C. § 353b(a) ("Sections 352(f)(1), 355, and 360eee-1 [of the FDCA] shall not apply to a drug compounded … in a facility that elects to register as an outsourcing facility if each of the following conditions is met [(setting forth the eleven

---

[3] An outsourcing facility is a facility engaged in the compounding of sterile drugs, that has registered with FDA as an "outsourcing facility," and that complies with all the requirements of Section 503B.  21 U.S.C. § 353b(d)(4)(A).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

conditions in § 353b(a)(1)-(11))].").  Section 503B's requirements for outsourcing facilities include registration, labeling, rigorous controls and quality standards, adverse incident reporting, and FDA inspections. 21 U.S.C. §§ 353b(a)(1), (a)(7), (a)(10), (b).

Congress enacted Section 503B to create a new, regulated pathway for large-scale compounders to operate safely, under federal FDA regulations.  *See* Ex. E to RJN, 159 Cong. Rec. H5961 (daily ed. Sept. 28, 2013) (statement of Rep. Waxman, co-sponsor) (the DQSA "give[s] hospitals and doctors the ability to access a source of compounded medicines that are made in a facility that is subject to stringent FDA quality standards and oversight").  Congress also created Section 503B as a course correction, to standardize the compounding regulations, so "[s]terile compounding facilities that do not want to comply with the patchwork of State laws and requirements can choose instead to have FDA regulate their compounding. [Section] 503B establishes rigorous quality standards, registration, adverse event reporting, inspections, and fees."  *See* Ex. D to RJN, 159 Cong. Rec. S8072 (statement of Sen. Alexander, co-sponsor); *see* Ex. E to RJN, 159 Cong. Rec. H5961 (statement of Rep. Waxman, co-sponsor) ("Divergent court decisions on the underlying statute had forced the agency to cobble together a piecemeal approach to regulating compounding pharmacies that was different in some parts of the country than in others.  That untenable legal situation created loopholes that companies like NECC[, a pre-Section 503B compounding facility that produced tainted drugs in 2012, causing tragedy and prompting new legislation,] were able to exploit.").

An "outsourcing facility" may compound sterile drugs without going through the new drug application process only if it registers with FDA and complies with Section 503B.  *See* 21 U.S.C. §§ 353b(a), (d)(4)(A).  FDA is in the midst of a complex rulemaking process to interpret and implement Section 503B.  During this ongoing process, FDA has developed a guidance document and an interim policy relevant to this dispute: (1) FDA, *Compounded Drug Products That Are Essentially*

5

*Copies of Approved Drug Products Under Section 503B of the Federal Food, Drug, and Cosmetic Act, Guidance for Industry* (Jan. 2018), *available at* https://www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/Guidances/UCM510153.pdf (last visited Nov. 11, 2020) ("Essentially a Copy Guidance"); and (2) FDA, *Interim Policy on Compounding Using Bulk Drug Substances Under Section 503B of the Federal Food, Drug, and Cosmetic Act, Guidance for Industry* (Jan. 2017), *available at* https://www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/Guidances/UCM469122.pdf (last visited Nov. 11, 2020) ("Interim Policy"), attached as Ex. B to RJN.  FDA is also in the middle of its rulemaking with respect to compounding from bulk ephedrine sulfate.  On September 3, 2019, FDA issued a notice proposing that ephedrine sulfate lacked a clinical need and soliciting comment.  Ex. F to RJN, 84 Fed. Reg. 46,014 (Sept. 3, 2019).  This is not a final decision and thus, bulk compounding of ephedrine sulfate is still governed by the Interim Policy.

## III.   NEXUS'S ALLEGATIONS

Nexus initiated this lawsuit on August 13, 2020.  After a meet and confer conference, US Compounding moved to dismiss the complaint on November 16, 2020, ECF No. 21.  Instead of an opposition brief, Nexus filed its First Amended Complaint on November 23, 2020, ECF No. 23, dropping one defendant and one of the causes of action, but Nexus's amendment still fails to cure the defects.

US Compounding is an Arkansas entity that owns and operates a Section 503B outsourcing facility in Conway, Arkansas.  *See* 11/23/20 Nexus's First Amended Compl., ECF No. 23 ("FAC"), ¶ 30.  Nexus alleges "[o]n information and belief" that US Compounding's parent corporation, Adamis Pharmaceutical Corporation ("Adamis") "controls and directs US Compounding's activities from and in California."  FAC ¶ 32.  Adamis is no longer a defendant in this lawsuit after US Compounding moved to dismiss Nexus's original complaint.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Nexus alleges that US Compounding compounds ready-to-use ephedrine sulfate drug products, starting from a bulk substance.  FAC ¶ 53.  Nexus alleges that US Compounding sells its products into California (and into this District) and Florida.  *Id.* ¶ 35.  Nexus has not alleged any facts indicating that US Compounding's compounding occurs within California or Florida (nor could it—the manufacturing occurs in Arkansas), nor has it alleged any facts about the volume of US Compounding's sales to California or Florida residents.  Arkansas is the only state in which Nexus alleges compounding is carried out.  *Id.* ¶ 59 (the Section 503B outsourcing facility is in Arkansas).

Plaintiff Nexus is an Illinois company, *id.* ¶ 26, that manufactures an ephedrine sulfate drug product called EMERPHED™ at a concentration of 5 mg/mL, *id.* ¶¶ 27, 42.  Nexus received FDA approval on April 17, 2020, *id.* ¶ 43, to market "EMERPHED™ for the treatment of clinically important hypotension occurring in the setting of anesthesia." *Id.* ¶ 27.  Nexus describes its product as "ready-to-use," *id.* ¶ 28, but because Nexus's product needs to be drawn into a syringe before use, additional steps are required before Nexus's product can be administered to a patient, *see* Compl., ECF No. 1, at ¶ 84 (referring to its product as "a vial of Nexus's FDA-approved EMERPHED™").

Nexus's First Amended Complaint alleges two causes of action: (1) Violation of California's Unfair Competition Law ("UCL") (Cal. Bus. Prof. Code § 17200, *et. seq.*) and (2) Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Fla. Stat. Ann. § 501.201, *et seq.*).  Each claim is premised on US Compounding's compounded ephedrine sulfate products, which Nexus alleges violate Section 503B.  Nexus dropped a third cause of action, unfair competition under an Arkansas statute, after US Compounding's motion to dismiss showed that the Arkansas statute only protects consumers, not competitors like Nexus.  *See* ECF No. 21, at 21-22.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

7

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Nexus's causes of action are anchored on allegations setting out three

2  purported "wrongs": (1) that US Compounding engages in unfair competition

3  because "it has not obtained the approval of FDA (or any other relevant regulatory

4  authority) to introduce the compounded ready-to-use ephedrine sulfate drug

5  products that they manufacture, market, sell, and distribute," *See* FAC ¶ 52; (2) that

6  US Compounding's product is "essentially a copy" of Nexus's product

7  (EMERPHED™), *see* FAC ¶¶ 7, 64-78, and (3) that US Compounding's products

8  are compounded from a bulk drug substance not listed on the Section 503B Clinical

9  Need List or on FDA's drug shortage list, *see id.* ¶¶ 7, 53-63.  In describing the

10  specific Section 503B violations at issue (relating to "essentially a copy" and

11  compounding from a bulk drug substance), Nexus cites exclusively to the FDCA

12  and FDA's guidance documents.  *See* FAC ¶¶ 53-78 (setting out Nexus's

13  allegations regarding "essentially a copy," compounding from bulk, and

14  collectively citing provisions of 21 U.S.C. § 353b, FDA guidance documents, and

15  provisions of 21 U.S.C. § 353a, but citing no state laws or statutes).

16  **IV.   <u>LEGAL STANDARD</u>**

17    A complaint must be dismissed if it fails to state a claim upon which relief

18  can be granted.  Fed. R. Civ. P. 12(b)(6).  When deciding Rule 12(b)(6) motions to

19  dismiss, "courts must consider the complaint in its entirety, as well as other sources

20  courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss," such

21  as "matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor*

22  *Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citation omitted).  A Rule 12(b)(6)

23  dismissal "can be based on the lack of a cognizable legal theory or the absence of

24  sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica*

25  *Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citation omitted).

26    A complaint "must contain sufficient 'well-pleaded, nonconclusory factual

27  allegation[s],' accepted as true, to state 'a plausible claim for relief.'" *Beckington v.*

28  *Am. Airlines, Inc.*, 926 F.3d 595, 604 (9th Cir. 2019) (citing *Ashcroft v. Iqbal*, 556

8

U.S. 662, 679-80 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")).  While courts "accept[] as true a plaintiff's well-pled factual allegations," this Court "is not required to accept as true legal conclusions couched as factual allegations." *Saber v. JP Morgan Chase Bank, N.A.*, 2013 WL 12124000, at *1 (C.D. Cal. Oct. 9, 2013).  A court need not accept as true allegations contradicted by facts of which it may take judicial notice.  *Shwarz v. U.S.*, 234 F.3d 428, 435 (9th Cir. 2000).

## V.   ARGUMENT

Nexus's First Amended Complaint should be dismissed with prejudice because **(A)** Nexus's claims are barred by non-mutual collateral estoppel; **(B)** Nexus's claims are preempted by the FDCA.  In addition, Nexus's claims under **(C)** California law and **(D)** Florida law cannot proceed because Nexus failed to allege in-state facts that would permit extraterritorial application of those statutes.  In the alternative, **(E)** because this case requires FDA's technical expertise, the Court should invoke primary jurisdiction so FDA can address the relevant technical and policy questions.

### A.   Nexus's Causes of Action Are Barred by Claim Preclusion

Nexus has tried and failed—three times—to save its state law causes of action from implied preemption by the FDCA.  This Court's preemption decisions in *Nexus v. QuVa*, *Nexus v. Leiters*, and *Nexus v. CAPS* bar Nexus's First Amended Complaint in this action under the doctrine of nonmutual claim preclusion.

Issue preclusion bars an action and warrants dismissal.  *Hawkins v. Risley*, 984 F.2d 321, 324 (9th Cir. 1993).  Defensive issue preclusion does not require both litigants to be the same parties as in the prior dispute—this is called nonmutual issue preclusion—as long as the prior issue was actually litigated to a final decision on the merits.  *Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery*, 44 F.3d 800, 802 (9th Cir.1995) ("It is well established that collateral estoppel can operate in favor of a party which did not litigate the earlier case, in appropriate

Baker & Hostetler llp
Attorneys at Law
Los Angeles

9

circumstances.").  "[D]efensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely 'switching adversaries.'"  *Parklane Hosiery Co. Inc. v. Shore*, 439 U.S. 322, 329 (1979).  To invoke issue preclusion and "foreclose relitigation of an issue under collateral estoppel: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action."  *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992).

All three factors are met here.  ***First***, the issues at stake are identical to those in *Nexus v. QuVa* (and the other two dismissed cases).  There, Nexus claimed that a compounder of an injectable ephedrine sulfate product was liable because the product was not approved by "FDA (or any other relevant regulatory authority)" and also because the product violated Section 503B's essentially a copy prohibition, both of which in turn, created liability under state unfair competition statutes.  Ex. G to RJN, *Nexus v. QuVa* First Amended Complaint, at ¶¶ 49, 65-73, 85-116.  Here, Nexus claims that US Compounding is liable because its injectable ephedrine sulfate product is not approved by "FDA (or any other relevant regulatory authority)," FAC ¶ 52, and because its product violates Section 503B's essentially a copy prohibition, *id.* ¶¶ 7, 64-78, both of which render it liable under two state unfair competition statutes.  Although this case includes an additional factual allegation—that US Compounding also violates 503B's provisions regarding compounding from a bulk substance, *id.* ¶¶ 7, 53-63—the issues are the same: violations of FDCA, and specifically Section 503B, to anchor state law claims are preempted.  ***Second***, the issue of FDCA preemption was fully and fairly litigated in the *Nexus v. QuVa* matter.  QuVa filed a motion to dismiss, Ex. H to RJN, Nexus had adequate time to respond, Ex. I to RJN, submitting 25 pages of briefing making its case for no preemption, and QuVa filed a reply brief, Ex. J to RJN.  (Nexus also

10

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  briefed the same issue in the *Nexus v. Leiters* case (25 pages), the *Nexus v. CAPS*
2  case (20 pages), and the *Nexus v. SCA* case (25 pages), though it voluntarily
3  dismissed the *Nexus v. SCA* case 13 days before Your Honor's scheduled hearing
4  on the fully briefed motion.)  There is no question Nexus has had ample
5  opportunity to litigate its position that the state law claims are not preempted, but
6  that position has been rejected three times by this Court.  ***Third***, the determination
7  of the preemption issue (at issue here as it was in *Nexus v. QuVa*) was a critical and
8  necessary part of the judgment in that case.  Indeed, it was the sole basis for
9  judgment in that case.  *See Nexus Pharm.*, 2020 WL 6498970, at *2 ("Defendants
10  argue that Nexus's claims are impliedly preempted by FDCA.  The Court agrees.").
11      Nexus's strategy for eliminating its ephedrine sulfate competitors by
12  asserting state law statutes to enforce purported FDCA infractions has already
13  failed on preemption grounds: the FDCA violations are FDA's to enforce, not
14  Nexus's.  Nexus should not be permitted to relitigate the same preemption issue
15  repeatedly; issue preclusion forbids it here.  *See, e.g.*, *Theodoropoulos v. Cty. of Los*
16  *Angeles*, 2015 WL 13403899, at *4 (C.D. Cal. Oct. 15, 2015), *aff'd*, 687 F. App'x
17  573 (9th Cir. 2017) (the Court's prior conclusions of fact and law "have preclusive
18  effect on Plaintiffs' current claims"); *Moss v. Nui Phao Mining Joint Venture Co.*,
19  2010 WL 3222377, at *5 (N.D. Cal. Aug. 13, 2010) (dismissing contract action
20  when plaintiff's claims on the same contract had been dismissed on *forum non*
21  *conveniens* grounds in an earlier decision, against a different defendant).  The Court
22  may dismiss Nexus's First Amended Complaint here without retreading old ground
23  on FDCA preemption arguments.
24      **B.    Nexus's Causes of Action Are Preempted by the FDCA**
25      Even if Nexus's claims could escape issue preclusion, they would not survive
26  another FDCA preemption inquiry.  Nexus's state law claims depend on alleged
27  wrongdoing under the FDCA and are therefore preempted.  *Nexus Pharm.*, 2020
28  WL 6498970, at *2.

11

"Congress made the FDA responsible for investigating potential violations of the FDCA, and gave it a number of enforcement mechanisms, including injunction proceedings, civil and criminal penalties, and seizure." *Id.* at *2 (Carney, J.) (citing 21 U.S.C. §§ 332-34, 372). Although "citizens may petition the FDA to take administrative action, 21 C.F.R. §§ 10.25(a), 10.30, private enforcement of the statute is barred: 'all such proceedings for the enforcement, or to restrain violations of [the Act] shall be by and in the name of the United States.'" *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1119 (9th Cir. 2013) (quoting 21 U.S.C. § 337(a)); *Borchenko v. L'Oreal USA, Inc.*, 389 F. Supp. 3d 769, 772 (C.D. Cal. 2019) (Section 337(a) "implicitly preempts any private right of action to enforce the FDCA."), *appeal dismissed*, 2020 WL 4877519 (9th Cir. May 13, 2020); *accord Nexus Pharm.*, 2020 WL 6498970, at *2.[4] The FDCA prohibits a plaintiff from expressly seeking to enforce the FDCA and also from using "state unfair competition laws as a vehicle to bring a private cause of action that is based on violations of the FDCA." *Goldsmith v. Allergan, Inc.*, 2011 WL 147714, at *2 (C.D. Cal. Jan. 13, 2011).

The test for implied preemption is described by the U.S. Supreme Court in *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350 (2001). Claims are impliedly preempted under the FDCA when they "exist solely by virtue of the FDCA…requirements." *Id.* at 353 (plaintiff's claims were preempted when they did not "rely[] on traditional state tort law" but rather "the existence of these federal enactments [were] a critical element in their case"). To escape preemption, "'the plaintiff must be suing for conduct that violates the FDCA…, but the plaintiff must not be suing because the conduct violates the FDCA.'" *Perez*, 711 F.3d at 1119. "There is a 'narrow gap through which a state-law claim must fit to escape

---

[4] The touchstone of any preemption inquiry is Congress's purpose. *See Retail Clerks Int'l v. Schermerhorn*, 375 U.S. 96, 103 (1963). The DQSA was enacted in relevant part to solve problems exacerbated by patchwork state laws for compounding, *see supra* Section II, and Congress's devotion to a uniform Section 503B standard signals its intent that FDCA violations be the sole province of FDA.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  preemption by the FDCA: The plaintiff must be suing for conduct that violates the

2  FDCA.'"  *Nexus Pharm.*, 2020 WL 6498970, at *3 (citing *Perez*, 711 F.3d at 1119).

3      Here, Nexus cannot thread this "narrow gap."  *Id.*  The misconduct Nexus

4  pleads to underpin its state law causes of action is tied to the FDCA.  Nexus alleges

5  that US Compounding: (1) has "not obtained the approval of FDA (or any other

6  relevant regulatory authority) to introduce the compounded ready-to-use ephedrine

7  sulfate drug products that they manufacture, market, sell, and distribute," *see* FAC ¶

8  52; (2) violates the federal Section 503B prohibition on compounding a drug that is

9  essentially a copy, *id.* ¶¶ 7, 64-78; and (3) violates the federal Section 503B bulk

10  compounding provisions, *id.* ¶¶ 7, 53-63.  These purported "wrongs" are federal

11  infractions, grown entirely from the FDCA statute.  Even after amending its

12  complaint, Nexus still fails to cite any state law authority for the specific

13  compounding violations it alleges.  *Id.* (citing only subsections of 21 U.S.C. §§

14  353b and 353a, FDA lists, and FDA guidance documents, but citing no state

15  statues).  There is no denying that "Nexus alleges that Defendant['s] actions

16  constitute unfair competition because [it] is not following the rules—and those

17  rules are the FDCA rules.  Like in *Buckman*, Nexus's claims exist only because of

18  the FDCA's requirements."  *Nexus Pharm.*, 2020 WL 6498970, at *3.

19  "Consequently," as the Court concluded in three other Related Cases, "Nexus's

20  unfair competition claims are impliedly preempted under the principle in Perez."

21  *Id.* (citing *Perez*, 711 F.3d at 1120).

22      According to Nexus's own pleading, US Compounding's "actions are unfair

23  only because they purportedly violate the FDCA."  *Nexus Pharm.*, 2020 WL

24  6498970, at *3.  Nexus's claims "exist only because of the FDCA's requirements,"

25  and the Court should dismiss them.  *Id.*  Nexus has asked the Court to step into

26  FDA's shoes and interpret and enforce the FDCA through the lens of state-law

27  claims.  This is exactly the circumstance when state law claims are preempted by

28  the FDCA—when the claims are alleged *because of* FDCA violations.  *Borchenko*,

13

389 F. Supp. 3d at 772 (quoting *Perez*, 711 F.3d at 1120).  Because Nexus's claims "exist solely by virtue of [] FDCA" requirements, they are preempted.  *Buckman Co.*, 531 U.S. at 352-53; *Nexus Pharm.*, 2020 WL 6498970, at *3.

In the Related Cases, Nexus has relied on *Stengel v. Medtronic, Inc*., 704 F.3d 1224 (9th Cir. 2013) and similar cases to resist preemption, but as the Court concluded in *Nexus Pharm.*:

> Nexus's reliance on *Stengel v. Medtronic, Inc*. is misplaced.  704 F.3d 1224.  In *Stengel*, the Ninth Circuit "clarified preemption law under the MDA" and held that a negligence claim for failure to warn the FDA was not preempted "insofar as the state-law duty parallels a federal-law duty under the MDA." *Id*. at 1233.  Yet as made clear in *Perez*, a parallel duty may save a claim only from express preemption under 21 U.S.C. § 360k(a).  *See Perez*, 711 F.3d at 1118.  Implied preemption is "another hurdle."  *Id*. at 1119.

2020 WL 6498970, at *3.  Nexus also frequently relies on an interlocutory decision in *Hope Medical Enterprises, Inc. v. Fagron Compounding Services, LLC*, 2020 WL 3803029 (C.D. Cal. Jul. 7, 2020), in which Judge Snyder concluded that state law claims could go forward "where there is a parallel state law that renders the same noncompliant conduct independently unlawful."  *Id*. at *13 (citation omitted).[5]  But here, Nexus has alleged no such parallel state law.  Nexus has not cited a single state law statutory provision for its allegations that US Compounding's products are (1) unapproved by FDA; (2) "essentially a copy" of

---

[5] Preliminary injunction orders like *Hope Medical* are not final decisions on the merits.  They apply a lower standard (asking only if the litigant has shown a "*likelihood* of success" or raised a "serious *question* on the merits") and are thus of questionable precedential value.  *See FBME Bank Ltd. v. Lew*, 142 F. Supp. 3d 70, 74 (D.D.C. 2015) (noting "the findings and conclusions in the Court's preliminary-injunction order may not have precedential value as to the ultimate merits of [litigant]'s claims"); *Fund For Animals v. Mainella*, 335 F. Supp. 2d 19, 27 (D.D.C. 2004) (same); *Martin v. Texaco, Inc.*, 602 F. Supp. 60, 62-63 (N.D. Fla. 1985) (preliminary injunction order "was not a decision on the merits and so has no precedential value").  And in any case, "a determination by another district court is not binding on this Court and therefore never dispositive." *Tran v. Sioux Honey Ass'n, Coop.*, 2018 WL 10612686, at *6 (C.D. Cal. Aug. 20, 2018).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   Nexus's product; or that (3) US Compounding violates the bulk compounding
2   provision Congress created in Section 503B.  FAC ¶¶ 53-78.

3        Instead, Nexus relied on FDCA statutory provisions to allege those "wrongs"
4   because it must: the conduct Nexus complains of turns on an application of the
5   FDCA and specifically, Section 503B.  Because Nexus's claims turn on decisions
6   Congress intended FDA to decide and enforce, the claims are preempted.  *Nexus*
7   *Pharm.*, 2020 WL 6498970, at *2 (given the comprehensive FDCA scheme,
8   "private enforcement of the statute is barred").  Judge Carter reached the same
9   conclusion in a similar case regarding compounding.  *Allergan USA Inc. v.*
10  *Imprimis Pharms., Inc*., 2017 WL 10526121, at *8 n.1 (C.D. Cal. Nov. 14, 2017)
11  (litigant's "alleged violation[s] of Section 503A and 503B's 'essentially a copy'
12  rule are precluded [by the FDCA] because the rule implicates various exceptions
13  that 'directly implicate the FDA's rulemaking authority'") (quoting *JHP Pharms.,*
14  *LLC v. Hospira, Inc*., 52 F. Supp. 3d 992, 999 (C.D. Cal. 2014)) (citing 21 U.S.C. §
15  353b(d)); *Allergan USA Inc. v. Imprimis Pharms., Inc*., 2018 WL 5919210, at *8
16  (C.D. Cal. Apr. 30, 2018) ("To proceed on this claim without a clear statement by
17  the FDA … would be to arrogate the authority of the FDA to decide, at least in the
18  first instance, the legality or illegality of marketing a particular substance.").

19       Nexus is suing *because of* FDCA violations and therefore, its complaint must
20  be dismissed.  *Buckman*, 531 U.S. 341; *Perez*, 711 F.3d at 1119.  "Nexus alleges
21  that Defendant['s] actions constitute unfair competition because [it is] not following
22  the rules—and those rules are the FDCA rules."  *Nexus Pharm.*, 2020 WL 6498970,
23  at *3.  Nexus's claims are preempted and its First Amended Complaint should be
24  dismissed with prejudice.  *Id.* (quoting *Somers v. Beiersdorf, Inc.*, 2020 WL
25  1890575, at *1 (S.D. Cal. Apr. 15, 2020) ("Nexus is asking the Court to displace
26  the FDCA, 'which requires individual determinations by the FDA, [and] does not
27  afford space for non-federal enforcement.").

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### C.   <u>Count One Fails: the UCL Does Not Apply Extraterritorially</u>

Nexus has failed to plead a basis for this Court to allow extraterritorial application of the UCL, and thus, Count One must be dismissed with prejudice. *Webb v. Carter's, Inc.*, 2009 WL 10670244, at *4 (C.D. Cal. June 23, 2009) ("[A] California statute presumptively does not apply beyond state boundaries, unless a contrary intention is clearly expressed or reasonably can be inferred from the language or purpose of the statute.") (citations omitted).  This presumption against extraterritoriality is "one against an intent to encompass *conduct* occurring in a foreign jurisdiction in the prohibitions and remedies of a domestic statute."  *Id.*  The UCL "contains no express declaration that it was designed or intended to regulate claims of non-residents arising from conduct occurring entirely outside of California."  *Id.*

Here, none of the supposed UCL misconduct occurred in California.  *See Tidenberg v. Bidz.com, Inc.*, 2009 WL 605249, at *4 (C.D. Cal. Mar. 4, 2009) ("The critical issues here are whether the injury occurred in California and whether the conduct of Defendants occurred in California.  If neither [are true], then Plaintiff will be unable to avail herself of [the UCL].").  Nexus alleges US Compounding "directs marketing efforts to California, solicits customers directly in California, and sells products to customers in California based on its unfair competition with Nexus," FAC ¶¶ 92, 94, but it is the act of compounding the products, not marketing efforts, that underpins Nexus's allegations of illegal conduct, *see id.* ¶¶ 53-78.  Nexus asserts its state law claims against US Compounding based on allegations that US Compounding's products: are not approved by FDA *see* FAC ¶ 52, "essentially a copy" of Nexus's product (EMERPHED™), *id.* ¶¶ 7, 64-78, and are compounded from a bulk drug substance not listed on the Section 503B Clinical Need List or on FDA's drug shortage list, *id.* ¶¶ 7, 53-63.  The wrongful conduct at issue in this case, then, is ***compounding***— not marketing or shipping—and US Compounding does not compound in

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

California.  FAC ¶ 59.  If US Compounding's marketing or sales techniques were at issue here, Nexus presumably would have alleged facts that US Compounding's marketing or advertising was unlawful, unfair, or fraudulent under the UCL, *see* FAC ¶ 91, but it has not so alleged.

Nexus alleges US Compounding is "[i]ndividually licensed as a pharmacy" in California.  *Id.* ¶ 93.  But again, Nexus ignores that it is required to "allege that **wrongful** conduct occurred in California," not simply that US Compounding engaged in *general* conduct in California.  *Lewand v. Mazda Motor of Am., Inc.*, 2017 WL 8117764, at *4 (C.D. Cal. Nov. 8, 2017) (emphasis added).  And, importantly, "in-state sales alone cannot properly be considered sufficient to establish a [UCL] nexus with California."  *Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1127 (N.D. Cal. 2000); *see Gershman v. Bayer HealthCare LLC*, 2015 WL 2170214, at *6-7 (N.D. Cal. May 8, 2015) (dismissing UCL claim where all plaintiffs had alleged was that some portion of defendant's sales had taken place in California). Likewise, that US Compounding "coordinates its unlawful activity with its parent company, Adamis, by and through its employees located in its headquarters in California," *id.* ¶ 92, is unavailing.  A parent organization's California locale does not "plausibly suggest" entitlement to relief under the UCL.  *Gustafson v. BAC Home Loans*, 2012 WL 4761733, at *5 (C.D. Cal. Apr. 12, 2012) (dismissing UCL claim when all plaintiff provided was the "conclusory assertion" that defendants' "scheme was devised, implemented and directed" from California); *Tidenberg*, 2009 WL 605249, at *4 ("the bulk of authority counsels against" assuming false statements emanated from California, based on defendants' principal California office).[6]

---

[6] The Court's exercise of personal jurisdiction is an inquiry distinct from the extraterritorial application of the UCL: showing one does not show the other. *Tidenberg*, 2009 WL 605249, at *4 ("[T]he existence of personal jurisdiction over a defendant does not alone permit application of the forum law to the claims of nonresident plaintiffs."). The "mere possibility that certain decisions related to [US

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Moreover, the First Amended Complaint fails to allege Nexus was injured in California. *See id.* ¶¶ 26; 97 (alleging "Nexus has lost money or property" but failing to assert Nexus specifically felt such injury in California). Nexus's inability to allege any such California injury is underscored by the fact that, even with the benefit of an amendment, Nexus cannot allege any harm felt in California. Nexus is an Illinois company with its principal place of business in Illinois. *Id.* ¶ 26. Nexus's conclusory allegation about harm to the "public," *id.* ¶ 95, is also insufficient. Nexus cannot rely on purported injuries of third parties to support its UCL claim. *See Obesity Research Inst., LLC v. Fiber Research Int'l*, 165 F. Supp. 3d 937, 947 (S.D. Cal. 2016) (UCL standing is confined to those who are "actually injured by a defendant's unlawful business practice"). Nexus must allege its *own* California injuries and establish it has "personally suffered such harm." *Id*. It has not.

Because liability here is predicated on a non-California resident complaining about non-California compounding and suffering no injuries felt in California, California is not the "locus of wrongful conduct underlying [Nexus's] claim." *Gustafson*, 2012 WL 4761733, at *6; *Webb*, 2009 WL 10670244, at *5; *Lewand*, 2017 WL 7080291, at *3. Nexus UCL claim therefore fails.

### D.   <u>Count Two Fails: the FDUTPA Does Not Apply Extraterritorially</u>

Likewise, fatal to the FDUTPA claim is Nexus's failure to sufficiently plead facts demonstrating the "offending conduct took place *predominantly or entirely* in Florida." *Bank of Am., N.A. v. Zaskey*, 2016 WL 2897410, at *9 (S.D. Fla. May 18, 2016) (citations and internal quotation marks omitted) (emphasis added). As with its UCL claim, Nexus alleges US Compounding "directs marketing efforts to Florida, solicits customers directly in Florida, and sells products to customers in

---

Compounding's manufacture of compounded drugs] may have been made in California does not, standing alone, justify application of the UCL to [Nexus's] claims." *Gustafson*, 2012 WL 4761733, at *6.

18

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  Florida." FAC ¶¶ 107, 109.  But again, the gravamen of Nexus's claims is not

2  marketing or sales activity, it is US Compounding's alleged unlawful *compounding*.

3  Because that compounding takes place in its Arkansas outsourcing facility, *see*

4  FAC ¶ 59, Nexus cannot plead facts showing the "offending conduct" (i.e.,

5  compounding) "predominantly or entirely" occurred in Florida.  *Bank of Am.*, 2015

6  WL 2897410, at *9.  That US Compounding is "[i]ndividually licensed as a

7  pharmacy" in Florida, FAC ¶ 108, says nothing about whether US Compounding

8  engaged in the at-issue *compounding* in Florida. The FDUTPA claim must be

9  dismissed with prejudice.

10      Finally, Nexus alleges that "[i]n *substantial* part, Nexus's claims arise out of

11  or relate to U.S. [sic] Compounding's activities in this District," i.e., California, **not**

12  Florida. FAC ¶ 37 (emphasis added).  Nexus may not allege one fact to avail itself

13  of the FDUTPA and a contrary fact to avail itself of a California venue.  *See, e.g.*,

14  *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d

15  1070, 193 (D. Colo. 2018) (dismissing FDUTPA claim with prejudice when alleged

16  events "substantially occurred in Colorado" for venue, holding that "claims can

17  'substantially' occur only in one place" and that place was not Florida).  Nexus's

18  FDUTPA claim lacks allegations required to sustain it.

19      **E.    In the Alternative, Nexus's Claims Fall Within FDA's Primary**
20          **Jurisdiction and the Court Should Dismiss Them or Stay the Case**

21      In the alternative, Nexus's claims are within FDA's primary jurisdiction—

22  they would have the Court decide matters of first impression that implicate FDA's

23  technical expertise—and the case should either be dismissed or stayed on that basis.

24      Primary jurisdiction is a "prudential doctrine under which courts may, under

25  appropriate circumstances, determine that the initial decision-making responsibility

26  should be performed by the relevant agency rather than the courts." *Syntek*

27  *Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002).

28  Under the primary jurisdiction doctrine, a district court may dismiss the case or stay

proceedings to allow the relevant agency to address the issue first. *See Astiana v.*

*Hain Celestial Grp., Inc.*, 783 F.3d 753, 760-61 (9th Cir. 2015). Courts apply the

doctrine when "an otherwise cognizable claim implicates technical and policy

questions that should be addressed in the first instance by the agency with

regulatory authority over the relevant industry rather than by the judicial branch."

*Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). Courts consider

the following factors when deciding to apply the doctrine: "(1) the need to resolve

an issue that (2) has been placed by Congress within the jurisdiction of an

administrative body having regulatory authority (3) pursuant to a statute that

subjects an industry or activity to a comprehensive regulatory authority that

(4) requires expertise or uniformity in administration." *Syntek*, 307 F.3d at 781.

Here, all four factors are readily met so the Court should dismiss or stay the

case under the primary jurisdiction doctrine. ***First***, the resolution of Nexus's claims

requires the Court to decide whether US Compounding's products fall inside or

outside the FDCA's "essentially a copy" provision, as interpreted by FDA in a

guidance document and whether US Compounding's products compounded from a

bulk substance are lawful or unlawful under the multiple steps in the Interim Policy.

FAC ¶¶ 53-78. These issues are for FDA to decide in the first instance, and

ultimately for FDA to enforce. ***Second***, Nexus's complaint—though it invokes

violations of state consumer protection statutes—ultimately turns on an

interpretation of the FDCA, which Congress has explicitly placed within the

jurisdiction of FDA, a regulatory agency that has rulemaking authority. *See* 21

U.S.C. § 337(a) (all enforcement of FDCA violations "shall be by and in the name

of the United States"). Through the text of Section 503B, which are chock-full of

references to Federal Register notices, and other FDA rulemaking responsibilities,

Congress charged FDA with the duty to make rules and regulate Section 503B

compounding. *See, e.g.*, 21 U.S.C. § 353b (stating, for example, that a drug

"appears on a list established by the Secretary"; the FDA must "publish[] a notice

20

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

in the Federal Register" and seeking comments on same; the drug "appears on the drug shortage list" maintained by FDA; the drug is not identified on "a list published by the Secretary"; the "Secretary shall make available on the public Internet Web site" of FDA a list of each registered outsourcing facility; each facility must "submit to the Secretary a report," and more). ***Third*** and ***fourth***, in enacting the DQSA, Congress intended to ensure uniformity in the regulation of Section 503B compounding and placed such regulation within FDA's exclusive jurisdiction. *See, e.g.*, Ex. E to RJN, 159 Cong. Rec. H5961 (statement of Rep. Waxman, co-sponsor) (prior to Section 503B, FDA was forced to "cobble together a piecemeal approach to regulating compounding pharmacies"); Ex. D to RJN, 159 Cong. Rec. S8072 (statement of Sen. Alexander, co-sponsor) (Section 503B is a new alternative to the legacy "patchwork of State laws and requirements").  Section 503B (and the FDCA as a whole) is a comprehensive regulatory framework that Congress decided would have no private right of action.  21 U.S.C. § 337(a). Administering this complex regulatory regime requires FDA's expertise to ensure uniformity in the industry.

FDA is the arbiter of (1) what constitutes a compounded drug that is "essentially a copy" of an FDA-approved drug according to FDA's essentially a copy guidance, which is currently under revision, and (2) whether or not a compounder may compound from bulk according to FDA's interim policy.  FDA has not finalized its policies on these issues.  For example, FDA is actively deciding whether a Section 503B compounder may compound ephedrine sulfate from a bulk drug substance.  The Court can take judicial notice of FDA's notice ***proposing*** to exclude ephedrine sulfate from the clinical need list and ***soliciting notice and comment*** on that proposal.  Ex. F to RJN, 84 Fed. Reg. 46,014.  FDA is still in its decision-making stage on this issue, which is a "responsibility [that] should be performed by the relevant agency rather than the courts." *Syntek*, 307 F.3d at 780. And, FDA has stated there is an upcoming revision to its guidance on "essentially a

21

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

copy," which it said will address comments it received about compounding starting from an FDA-approved drug substance. *See* Ex. A to Request for Judicial Notice ("RJN") ("9/10/20 FDA Update"), at 2.[7]

These are "particularly complicated issue[s] that Congress has committed to a regulatory agency," and thus, Nexus's case should, if not dismissed on other grounds, be dismissed (or stayed) under the primary jurisdiction doctrine. *Clark*, 523 F.3d at 1114.

## VI.   **CONCLUSION**

For all these reasons, US Compounding requests that this Court dismiss Nexus's First Amended Complaint with prejudice and without leave to amend. Nexus has already amended its complaint once and doing so again would be futile. Alternatively, US Compounding asks the Court to invoke primary jurisdiction and dismiss the case without prejudice or enter a stay while FDA continues its rulemaking activities.

Dated:  December 14, 2020        **BAKER & HOSTETLER LLP**

By:   */s/ Bridget S. McCabe*
       Bridget S. McCabe
       Dyanne J. Cho

*Attorneys for Defendant*
US COMPOUNDING, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

---

[7]   As another example of FDA's attention to its role as the enforcer of the "essentially a copy"—and desire for uniformity in enforcing the compounding provisions of FDCA—FDA issued a declaration in a Related Case regarding the issue of applying "essentially a copy" to a compounded drug starting from an FDA-approved drug substance. *See, e.g.*, Ex. C to RJN, Declaration of Maria Edisa Gozun, at ¶ 5.

22